[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On March 16, 1999, the Department of Children and Families (hereinafter the "Department") filed a petition which alleges that Brian D., born on March 10, 1999, is an uncared for child in that his home cannot provide the specialized care which his physical, emotion or mental condition requires, and a motion for Order of Temporary Custody. An Order of Temporary Custody was granted on March 16, 1999, and Brian remains in the custody of the Department. On March 28, 1999, the Department flied a Petition for termination of the parental rights of Judith D., mother of Brian and John Doe, father. On April 20, 1999, the Department filed a Motion to Consolidate the uncared for petition and the termination petition into one coterminous action, and that motion was granted by the court.
The grounds alleged for termination of parental rights are that the father has abandoned his child in the sense that he has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of said child; that the child has been denied, by reason of act or acts of commission or omission by the mother, the guidance or control necessary for his physical educational moral or emotional well being; that the child is neglected or uncared for and has been in the custody of the Commissioner for at least fifteen (15) months and the mother has been provided specific steps to take to facilitate the return of the child and has failed to achieve such degree of personal rehabilitation as would encourage the belief that, within an reasonable time, considering the age a needs of the child, she could assume a responsible position in the life of the child[1]; and there is no ongoing parent-child relationship with respect to the father that ordinarily develops as a result of a parent having met on a continuing, day to day basis the physical, emotion, moral or educational needs of the child and to allow further time for the establishment of re-establishment of the parent-child relationship would be detrimental to the best interests of the child.
The petitions were duly served on the parents. The court has jurisdiction over this matter, and there is no pending action affecting custody of this child in any other court. The mother has been represented by counsel throughout these proceedings. The mother named Mr. David M. as Brian's father. Paternity test results indicated that David M. is not Brian's father. The mother has not named anyone else as the child's father. Father's identity is therefore unknown, and no one has responded CT Page 14560 to the notification by publication in the newspaper. Reasonable efforts have been made to locate the father.
The court, having reviewed the verified petitions, summary of facts, social study, and exhibits presented at trial; and having heard the testimony of Lynn Rose, DMR Aide; Patience Quinn, from KidSafe; Melissa Wilcox, foster mother; Karma Jimenez, Department social worker Sharon C., maternal aunt; Alice D., maternal grandmother; and Judith D., mother, makes the following factual findings and reasonable inferences supported by those findings:
FINDINGS OF FACT
Brian D. was born on March 10, 1999 at Manchester Memorial Hospital, weighing 5 lbs. 13 oz. After a 35 week pregnancy. Brian was delivered vaginally in breech position after mother presented late at the hospital with the infant's feet protruding. His initial Apgar indicated some newborn distress and caused some concern about his initial health. He was also jaundiced. Concerns over Ms. D.'s ability to care for her high risk infant resulted in his placement in a specialized foster home under an order of temporary custody.
The Department has been involved with mother's family since 1985. Mother had her firstborn child removed from her care over ten (10) years ago. Judith D. is a 42 year old woman with an IQ of 40, who has been cognitively challenged since birth. She attended special education classes all her life and became a client of the Department of Mental Retardation (hereinafter "DMR") upon turning age 21. She has received intensive services for the past twenty (20) years including assistance with obtaining housing, income assistance through Social Security Income Assistance, medical services through Title 19-Medicaid, assistance in becoming independent in her personal care, job training and instruction in tasks of daily living including maintaining her apartment adequately. Lynn Rose, her DMR aide testified that she spends 3-5 hours per day, Monday through Friday, with mother assisting her in all areas of daily living. Some of the concerns that individuals from DMR, who have had long and substantial involvement with Ms. D. have indicated, are that she remains gullible and indiscriminate about her friends and individuals she lets into her house; needs support in choosing appropriate foods and in shopping for them; lacks knowledge of nutritional needs of an infant; lacks knowledge of infant/child development; remains unable to maintain a clean and healthy environment even for 2-3 days and appears unmotivated to do so; needs house cleaning services weekly and assistance daily to maintain a minimal standard of cleanliness; has skill deficits in all areas of daily living; has had job training but has no interest in working; would not be able to tell if child was sick or needed medical CT Page 14561 assistance; has difficulty sequencing and/or remembering telephone numbers; and gives food and money away.
The hospital contacted the Department upon Brian's birth, stating concerns they had about mother's ability to provide care for her newborn. They reported that "mother thinks the baby is a doll". The hospital staff attempted to involve Ms. D. in caring for her infant son, however, she was unable to master bathing, diapering and dressing the child.
Once Brian was placed, services continued to be offered to her to help her learn how to care for herself and her child. She was offered parenting classes at the Manchester Family Resource Center, she was evaluated by the Parenting Assessment and Support Unit of the Pappanikou Center for Disability Studies; she enjoyed twice monthly visitation supervised by KidSafe; and supported living services continued through DMR. The evidence and testimony presented establishes that mother cooperated with each and every service offered to her. Sadly, however, Ms. D. has simply been unable to benefit from the reunification services offered to her and is in no better position to care for Brian now that when he was first placed. All who spoke of mother describe her as a sweet, pleasant, innocent woman who has significant cognitive disabilities which interfere with basic daily tasks of living. This was also the Court's observation. In order for mother to be able to safely, and adequately provide care for Brian, she would need assistance seven (7) days per week, twenty-four (24) hours per day. None of the witnesses who testified were aware of the availability of such a service.
The very thorough assessment done by the University of Connecticut, Pappanikou Center for Disability Studies, included a review of all records available from the court, the Department and agencies working the mother's family; observation and assessment of the parent-child interaction, an interview with the maternal grandmother and grandfather; an interview with mother; an assessment of the abilities and skills of the mother and of Brian; a Home Safety Assessment; a HOME Scale, which provides a measurement of the environmental stimulation provided by a mother for a child; and a Parent Needed Support Scale, which provides a profile of relative parenting adequacy. The Pappanikou Center concluded that "Ms. D. has significant cognitive disability which interferes in basic daily tasks of living. . . . She has a difficult time making judgments in complex social situations. . . . Ms. D. appears both unable and unmotivated to benefit from the instruction provided for many years. . . . It is highly doubtful that Ms. D.'s personal needs would decrease in the foreseeable future freeing her to care for the needs of her son should he return to her care. . . . In fact, with the added responsibilities of a infant/toddler, the need for supportive CT Page 14562 interventions within this family would inevitably escalate in geometric proportions. . . . It is quite doubtful that there will be the significant change and personal growth needed to adequately care for Brian in the near future. . . . It is felt that Ms. D. would require nearly 24 hour support to insure that Brian's basic needs for food, clothing, shelter, safety and protection would be met. . . . Ms. D. is not yet completely independent in basic skills such as feeding and diapering and keeping a child reasonably clean. She does not grasp the complex interactions between feeding, learning sleeping, play and guidance, as they relate to language, motor, cognitive and communication development. There continue to be concerns about her judgment in emergency situations as well as her ability to protect Brian from the potentially harmful influences of others. . . . The sanitation of Ms. D. "s apartment continues to be unsuitable for an infant, especially one who will soon be walking. Issues of cleanliness coupled with the availability of unsafe objects (matches, lighters, razors, pills) would threaten Brian's safety should be returned home. . . . Given the information currently available I do not think itin the best interest of Brian D. to be reunited with his mother." (Kathleen Bradley Ph.D)
ADJUDICATION
By a fair preponderance of the evidence, as of the date of the petition, the court finds that Brian is an uncared for child in that the child's home could not provide the specialized care which his physical, emotional or mental condition required.
With respect to the statutory grounds for termination of parental rights, the court finds, by clear and convincing evidence, as of June 29, 2000, the date of the last amendment to the petition for termination of parental rights, that Brian has been abandoned by his father. The identity of the father is unknown and no one has come forward in response to the notice of these proceedings by publication in the newspaper. Consequently, no father has maintained a reasonable degree of interest, concern, or responsibility as to the welfare of this child
The court finds by clear and convincing evidence, that Brian has been denied, by reason of an act of commission or omission by the mother, the care, guidance or control necessary for his physical, educational, or emotional well-being. The mother's cognitive disabilities have prevented her from benefitting from services which would prepare her for the task of providing care to her son. In addition, however, mother has been unmotivated in some areas in which she does have the abilities, to do what is necessary to address some of the issues in her life. Ms. Lynn Rose, mother's DMR aide testified that mother knows how to keep her apartment clean and can clean very well, by just won't. CT Page 14563
The court finds by clear and convincing evidence that Brian is uncared for and has been in the custody of the Commissioner for at least fifteen (15) months and that mother has been provided specific steps to take to facilitate the return of the child and the mother has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering his age and needs, she could assume a responsible position in his life. Brian has been in the custody of the Commissioner since March 13, 1999, more that fifteen (15) months before the filing of the amendment to the termination petition on June 27, 2000. Mother was served with Specific Steps along with the Order of Temporary Custody and Uncared for petition on March 17, 1999. The court has found Brian to be an uncared for child. As stated previously, in spite of the fact that mother has cooperated with services offered to her, she remains unable to provide safe, adequate care to Brian.
The court finds by clear and convincing evidence that there is no ongoing parent-child relationship between Brian and his father. As stated previously, the identity of the father is unknown to the Department and the child Therefore, there is no ongoing parent-child relationship.
REQUIRED FINDINGS
The court makes the following factual findings based upon the clear and convincing evidence required by C.G.S. Sec. 17a-122(e):
(1) Appropriate and timely services were provided to mother by the State, including parenting classes, a comprehensive evaluation, supervised visitation and supported living services through the Department of Mental Retardation. There has been no father available for whom to offer services.
(2) The court finds by clear and convincing evidence that the Department made reasonable efforts to reunify the child with his mother. Mother has significant cognitive disabilities which interfere with basic daily tasks of living, and with her ability to provide adequate care to her child.
(3) The Department set reasonable and realistic goals embodied in the Specific Steps dated March 17, 1999. Mother has been unable to successfully comply with or benefit from services offered. There is no identified father for whom to set Specific Steps.
(4) Findings regarding the feelings and emotional ties of the child with respect to the parents, any guardian of the person and any person who has exercised physical care, custody and control of the child for at CT Page 14564 least one year and with whom the child has developed significant emotional ties. Brian does not appear to recognize his biological mother and does not show signs of being attached to her. He often averts his gaze from her and is observed to cry when she holds him. Brian's attachment to his foster parents and foster sister is strong and healthy, presaging healthy emotional development and the development of appropriate social skills.
(5) Brian is now twenty (20) months old.
(6) Findings regarding efforts of the parents to adjust their circumstance, conduct and conditions to make it in the best interest of the child to return to their home in the foreseeable future and (A) the extent to which the parents have maintained contact with the child as part of an effort to reunite the child with the parents, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child. This finding is inapplicable to father, whose identity is unknown. Ms. D. loves her son very much and seems sincere in her desire to regain custody of him. She is, however, simply unable to do it. She has consistently maintained contact with her son as allowed by the Department.
(7) No inappropriate conduct is noted on the part of anyone which would have prevented the mother from having a meaningful relationship with her child. The Department took reasonable steps to encourage the mother to have such a relationship with her child. There was no evidence that economic circumstances prevented mother from having a meaningful relationship with Brian This finding is inapplicable to the unidentified father for whom reasonable steps could not be taken.
DISPOSITION
Brian has been continuously Out of the care of his mother since his discharge from the hospital on March 13, 1999, three (3) days after his birth. He is in a nurturing, stable environment which meets all of his needs and in which he is thriving. The mother is unable now, nor within a reasonable period of time will she be able to provide for him.
It is therefore, in the best interest of Brian D. that a termination of parental rights enter with respect to the mother, Judith D., and the father John Doe and accordingly, a termination of their parental rights is ordered. The Department of Children and Families is hereby appointed the statutory parent.
A permanency plan for this child shall be submitted with thirty (30) days. A review plan shall be filed in accordance with state and federal CT Page 14565 law.
Patricia Lilly Harleston, Judge.